## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>FourWorld Capital Management LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 23- |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR <u>AN ORDER PURSUANT TO 28 U.S.C. § 1782</u>

OF COUNSEL:

Duane L. Loft
Brianna Hills Simopoulos
Jingxi Zhai
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019 Telephone:
(212) 970-2300
duane.loft@pallasllp.com
brianna.simopoulos@pallasllp.com
jingxi.zhai@pallasllp.com

Jamie L. Brown
HEYMAN ENERIO GATTUSO &
HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
Telephone: (302) 472-7300
jbrown@hegh.law

*Attorneys for Petitioner*

Dated: December 22, 2023

# TABLE OF CONTENTS

APPLICATION ........................................................................................................ 1

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 3

     A.    Petitioner, the Company, and Siemens Energy ........................... 3

     B.    The Takeover Transaction ........................................................... 4

     C.    The Administrative Proceeding and Appeal ............................... 5

     D.    The Spanish Proceeding ............................................................. 6

     E.    Respondents and the Discovery Sought ..................................... 7

ARGUMENT ........................................................................................................ 8

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782 ............ 9

     A.    Respondents "Reside" or Are "Found In" this District. ............................ 9

     B.    The Discovery Sought is "For Use" in a Foreign Proceeding. ................ 11

     C.    Petitioner Is An "Interested Person". ...................................... 12

II.    The *Intel* Factors Weigh in Favor of Granting Discovery ................................. 13

     A.    *Intel* I: Respondents Are Not Parties to the Spanish Proceeding. ............. 13

     B.    *Intel* II: The Spanish Court Will Be Receptive to the Requested Discovery. ..................................................................... 14

     C.    *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions. ............................................................. 15

     D.    *Intel* IV: The Subpoenas Are Not Unduly Burdensome. .......................... 17

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)..................................................................................... 19

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017).............................................................................. 11, 12

*In re Application of Biomet Orthopaedics Switzerland GMBH*,
  742 F. App'x 690 (3d Cir. 2018) ................................................................... 9, 13, 19

*In re Application of Gilead Pharmasset LLC*,
  No. 14-mc-243 (GMS), 2015 WL 1903957 (D. Del. Apr. 14, 2015) ............................. 14, 19

*In re Application of Polygon Global Partners LLP*,
  No. 21-mc-007 WES, 2021 WL 1894733 (D.R.I. May 11, 2021)................................. passim

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998), *as amended* (July 23, 1998) ............................................. passim

*In re Bernal*,
  No. 18-21951, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018).................................. 15

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011)............................................................................. 11

*In re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782*,
  No. 20-mc-334-MN, 2021 WL 1063390 (D. Del. Mar. 19, 2021), *reconsideration
  denied sub nom. In re Eni S.p.A.*, 2021 WL 2985171 (D. Del. July 15, 2021)...................... 11

*In re Ex Parte Application of Sandoz Canada, Inc.*,
  No. 20-02425 (MAS) (DEA), 2020 WL 5642189 (D.N.J. Sept. 22, 2020).......................... 19

*In re Gushlak*,
  No. 11-MC-218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011).............................. 18

*In re Liverpool Ltd. P'ship*,
  No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) ............................... passim

*In re O'Keeffe*,
  No. 14–5835 (WJM), 2015 WL 540238 (D.N.J. Feb. 10, 2015), *aff'd sub nom. In re
  The Application of Kate O'Keeffe for Assistance Before a For. Trib.*, 2015 WL
  5039723 (D.N.J. Aug. 26, 2015), *aff'd sub nom. In re O'Keeffe,* 646 F. App'x 263 (3d
  Cir. 2016) ............................................................................................... 14, 15

*In re O'Keeffe*,
  646 F. App'x 263 (3d Cir. 2016) ............................................................... 13, 19

*In re Request from Cayman Islands*,
  No. 22-mc-00536-RGA, ECF No. 6 (Order) (D. Del. Jan. 12, 2023) .................................. 19

*In re Request from Vienna*,
No. 23-mc-258-CFC, 2023 WL 6278815 (D. Del. Sept. 26, 2023)....................................... 9, 10

*In re Sampedro*,
No. 18-mc-47 (JBA), 2018 WL 5630586 (D. Conn. Oct. 30, 2018) ....................................... 15

*In re Third Eye Cap. Corp.*,
No. 22-963 (JXN) (MAH), 2022 WL 714758 (D.N.J. Mar. 10, 2022) ................................... 19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).............................................................................................................. passim

*Kulzer v. Esschem, Inc.*,
390 F. App'x 88 (3d Cir. 2010) ...................................................................................... 12, 15

*Matter of HES (Caribbean) Int'l Holdings, S.R.L.*,
No. 20-506 (CCC) (ESK), 2020 WL 728892 (D.N.J. Feb. 13, 2020) ................................... 19

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)............................................................................................ 11, 16

*Sampedro v. Silver Point Cap., L.P.*,
818 F. App'x. 14 (2d Cir. 2020), *as amended* (June 5, 2020) ......................................... 11, 12

*Via Vadis Controlling GmbH v. Skype, Inc.*,
No. 12-mc-193-RGA, 2013 WL 646236 (D. Del. Feb. 21, 2013)........................................... 9

**Statutes**

28 U.S.C. § 1782.................................................................................................................... passim

## APPLICATION

FourWorld Capital Management LLC ("Petitioner") respectfully submits this application (the "Application") pursuant to 28 U.S.C. § 1782 ("Section 1782") seeking an order: (a) granting Petitioner leave to serve the subpoenas (the "Subpoenas") on Kroll, LLC (f/k/a Duff & Phelps, LLC) ("Kroll") and American Appraisal Associates, LLC ("American Appraisal" and collectively, "Respondents"); (b) directing Respondents to produce the tailored materials described in the Subpoenas within thirty days of service of the Subpoenas; (c) directing Respondents each to provide a witness to appear for a Rule 30(b)(6) deposition in compliance with the Subpoenas on a mutually agreeable date and within a reasonable time after Respondents' confirmation of the final production in response to the Subpoenas; and (d) granting any and all other relief to Petitioner as the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to Section 1782 to take limited discovery from entities found in this District for use in connection with various proceedings filed in Spain (the "Spanish Proceeding") described more fully below. The Spanish Proceeding arises out of the administrative decision of the Spanish National Securities Market Commission (*Comisión Nacional del Mercado de Valores*, hereafter "CNMV"), by which the CNMV authorized Siemens Energy Global GmbH & Co. KG ("Siemens Energy") to takeover and delist Siemens Gamesa Renewable Energy, SA ("Siemens Gamesa" or the "Company"). Among other things, Petitioner asserts that the CNMV breached Spanish law by approving an inadequate bid.

Through this Application, Petitioner seeks narrowly tailored discovery (the "Requested Discovery") from Respondents, as the corporate parents to Kroll Advisory, SL ("Kroll Advisory"), the external valuation advisor to the CNMV, which is highly relevant to the issues in the Spanish Proceeding concerning Siemens Energy's takeover and delisting of the Company.

1

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal.  Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures."  *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998), *as amended* (July 23, 1998).  Petitioner's Application meets the statutory requirements of Section 1782: (i) Respondents "reside" or are "found" in this District because they are incorporated in Delaware; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Spanish Proceeding; and (iii) Petitioner, as a party to the Spanish Proceeding, easily meets the standard for an "interested person" under the statute.  In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioner's Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

*First*, Petitioner seeks discovery from "nonparticipant[s]" in the foreign action, *id.*, as Respondents are not parties to the Spanish Proceeding.  This is a sufficient basis for the Court to hold that the first *Intel* factor is satisfied.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Spanish courts might be unreceptive to Section 1782 assistance.  *Id.*  To the contrary, as established in the declaration of Petitioner's Spanish Counsel, Ignacio Aragón Alonso, Spanish courts are likely to be receptive of evidence gathered abroad.  Declaration of Ignacio Aragón Alonso ("Aragón Decl.").  Several U.S. courts have granted Section 1782 applications for the production of documents in aid of proceedings filed in Spain.  At least one U.S. court has granted Section 1782 discovery for use in the same type of Spanish proceeding at issue here—that is, a proceeding challenging the CNMV's decision to approve a similar takeover and delisting

transaction.  *See, e.g.*, *In re Application of Polygon Global Partners LLP*, No. 21-mc-007 WES, 2021 WL 1894733 (D.R.I. May 11, 2021).

*Third*, the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Intel*, 542 U.S. at 244–45.  The requested discovery does not implicate any privilege or protection that would make it improper under Spanish law.

*Fourth*, the requested discovery is not "unduly intrusive or burdensome."  *Id.* at 245.  To the contrary, the Subpoenas are narrowly tailored to seek information directly relevant to the critical issues in the Spanish Proceeding, including documents related to Respondents' work on the Company and with the CNMV.

*Finally*, this Court should exercise its discretion to order production of any responsive discovery that Respondents have in their possession, custody, or control, regardless of the physical location of that discovery.  Section 1782 is extraterritorial in reach, and courts commonly order discovery of documents located abroad, particularly where, as here, the discovery is from third-parties not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    Petitioner, the Company, and Siemens Energy

Petitioner FourWorld Capital Management LLC is a minority shareholder in the Company and is a complainant in the Spanish Proceeding.  Specifically, Petitioner is the complainant in an action in the Spanish National High Court (*Andiencia Nacional*, hereafter the "Spanish Court") brought to challenge the administrative decision of the CNMV to approve the voluntary takeover bid made by Siemens Energy.  *See* Aragón Decl. ¶¶ 2, 5.

The target of the takeover, Siemens Gamesa, a wind turbine manufacturing company, was founded in 1976 and is headquartered in Spain.  Before the takeover, the Company's stock was

publicly traded on the Madrid, Barcelona, Bilbao and Valencia Stock Exchanges under the SGRE symbol. *See id.* ¶ 5.

The bidder is the Company's majority shareholder, a German company engaged in the manufacture, operation, distribution, trade, and the provision of services in the areas of energy production, transfer, distribution and storage. Siemens Gamesa is an affiliate entity of Siemens Energy, which, prior to the takeover, was the majority shareholder, holding 67.07 percent of Siemens Gamesa's share capital. *See id.* ¶ 6.

### B. The Takeover Transaction

On May 18, 2022, Siemens Energy publicly announced that it was considering launching a takeover bid for all of Siemens Gamesa's shares with the intention of delisting the Company from the Spanish stock exchanges. *See* Aragón Decl., Ex. 1. A few days later, Siemens Energy submitted an announcement to the CNMV of its takeover bid for all shares of Siemens Gamesa not already controlled by Siemens Energy, which represented 32.93 percent of the Company's share capital, at a price of 18.05 euros per share (the "Takeover Bid"). *See id.*, Ex. 2. Siemens Energy also indicated its intention of delisting the Company if Siemens Energy obtained at least 75 percent of the share capital through the Takeover Bid, by utilizing an exemption, under Spanish law, to the obligation to launch a separate delisting takeover bid. *Id.* ¶ 9.

On May 31, 2022, Siemens Energy filed an authorization request with the CNMV seeking the CNMV's authorization of the Takeover Bid. *Id.* ¶ 10. In support of its authorization request, Siemens Energy submitted a takeover prospectus and a valuation report of the Company issued by PricewaterhouseCoopers Asesores de Negocios, S.L. (the "PwC Report"). *Id.*

On November 7, 2022, the CNMV authorized the Takeover Bid and Siemens Energy's bid price of 18.05 euros per share (the "CNMV Authorization"). *See id.*, Ex. 4. The CNMV based its decision in part on the external advice and analyses of Respondents, through their Spanish

subsidiary, Kroll Advisory.  Kroll Advisory served as the CNMV's external valuation advisor in connection with the Takeover Bid.  *Id.* ¶ 23.  The CNMV relied on at least one report prepared by Kroll Advisory (the "Kroll Report") to support and validate the findings in the PwC Report, including the share price and valuation range.  *Id.* ¶ 11.

Following the CNMV Authorization, Siemens Energy closed on its offer and obtained a 92.72 percent stake in the Company.  *Id.* ¶ 12.  Then, on January 25, 2023, at an extraordinary meeting of shareholders, the Company's shareholders voted to delist the Company (a *fait accompli* given Siemens Energy's controlling position in the shares).  *See id.*, Ex. 6.  The Company then asked the CNMV for approval to delist; the CNMV granted approval (based on its prior approval of the Takeover Bid) on February 3, 2023, and the Company was then delisted that same month. *Id.* ¶ 14.

### C.    The Administrative Proceeding and Appeal

Spanish law prescribes certain procedures that must be followed before a bidder can obtain regulatory approval to delist an acquisition target with shares that trade in Spain.  As a general rule, a company wishing to delist its shares must receive the approval of its shareholders and launch an offer to purchase those shares.  Nevertheless, Spanish law provides some exceptions to this rule. Most relevant here is a provision of the Spanish takeover law permitting companies to delist their shares if a prior takeover was conducted at a price approved by the CNMV.  To provide such approval, in accordance with Spanish law, the CNMV must adhere to strict limitations, including a review of the proposed price to be paid.  *See* Aragón Decl. ¶ 8.

The CNMV's decisions are subject to judicial review by the Spanish Court.  *Id.* ¶ 15.  Under Spanish law, to challenge a CNMV decision in court, a complainant must first file a writ requesting production of the relevant administrative file.  *Id.* ¶ 16.  Once the administrative file is received, a complainant has 20 business days to file the complaint and accompanying evidence.  *Id.*  If a

complainant determines that the administrative file is incomplete, it may file a motion to expand the file, which stays the deadline to file its complaint. *Id.*

Here, on January 9, 2023, Petitioner commenced an administrative proceeding before the Spanish Court against the CNMV to challenge its approval of the Takeover Bid. The proceeding was commenced by a writ challenging the CNMV Authorization and a request for the CNMV's administrative file. *Id.* ¶ 18. Petitioner received the file but challenged it as incomplete. Many of the missing documents sought by Petitioner as part of its challenge overlaps with the information sought through the Application in this action, including "the Kroll Report in its entirety," and other documents relating to Respondents, which the CNMV relied on in its authorization of the Takeover Bid. *Id.* ¶ 19. While the Spanish Court initially ruled in favor of Petitioner's request for additional documents, it reversed its decision on October 31, 2023 following an appeal submitted by the CNMV for reconsideration. *Id.* ¶¶ 19–20. As the basis for its decision, the Spanish Court did not find that the requested information was irrelevant to the CNMV Authorization, but instead, that it was not part of the CNMV's administrative file. *Id.* ¶ 20. Petitioner filed an appeal of the Spanish Court's decision on November 9, 2023. *Id.*, Ex. 10.

Petitioner is now awaiting the CNMV's response to its appeal and thereafter, the Spanish Court's decision on its appeal. The Spanish Court must first resolve Petitioner's appeal before proceeding with Petitioner's complaint, which Petitioner proceeded to file with the Spanish Court on December 5, 2023. *Id.* ¶ 20.

### D.    The Spanish Proceeding

Upon completing the administrative process to initiate the proceeding and request the underlying file, Petitioner filed its complaint before the Spanish Court, requesting the annulment of the CNMV Authorization (the "Complaint"). In the Complaint, Petitioner asserts that the CNMV Authorization violated applicable Spanish law. Among other things, the Complaint asserts

that the CNMV authorized the Takeover Bid at an inadequate and unfair price pursuant to inadequate and erroneous reports provided by the valuation experts, including Respondents' Spanish subsidiary, Kroll Advisory, SL ("Kroll Advisory"). Petitioner also alleges that the CNMV did not take into account serious conflicts of interest of Siemens Gamesa's directors and failed to properly consider certain exceptional circumstances at the time the takeover bid was announced. The Complaint seeks, among other things, an order compelling the CNMV to recalculate the applicable share price or, alternatively, requesting that the Spanish Court set the applicable share price. Aragón Decl. ¶ 21.

In assessing the CNMV's decision to authorize the Takeover Bid, the Spanish Court will examine both the valuation of the Company and the fairness of the process that led to the CNMV's Authorization. *See id.* ¶ 23.

### E.    Respondents and the Discovery Sought

Respondents, through their wholly owned Spanish subsidiary, Kroll Advisory, served as external valuation advisor to the CNMV. Aragón Decl. ¶ 26. Kroll Advisory is a Spanish sole proprietorship that is wholly owned by Respondent American Advisory. *Id.*, Ex. 12. American Advisory is a division under Respondent Kroll since February 2015, after it was acquired by Kroll (then known as Duff & Phelps Corporation). Declaration of Duane L. Loft ("Loft Decl."), Ex. 5.

Respondents, through Kroll Advisory, produced at least one valuation report regarding the Takeover, upon which the CNMV relied on in its authorization of the Takeover Bid and finding that the bid price was sufficiently justified. Aragón Decl. ¶¶ 11, 22–23. Respondents are both incorporated in Delaware. Loft Decl., Exs. 3 and 4.

Petitioner's Application seeks discovery from Respondents on issues relevant to the Spanish Proceeding, including: (i) the fairness of the Takeover Bid share price; (ii) the process leading to the CNMV's approval of the Takeover Bid and the Takeover Bid share price; (iii)

transactions that the Company entered after the Takeover Bid; (iv) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared in support of Respondents' valuation of the Takeover Bid, including materials related to any valuation reports they rendered, and/or any advice provided by Respondents; and (v) any alternative bids to acquire the Company.

The Spanish Court will accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence. Aragón Decl. ¶¶ 24, 27–32. This requested discovery will accordingly significantly assist the Spanish Court in evaluating the CNMV's decision to approve the Takeover Bid. *Id.* ¶¶ 22–24, 32.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States district courts to grant discovery for use in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from a person that resides or is found within the district; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Bayer*, 146 F.3d 188, 193, 195 (3d Cir. 1998).

If the statutory requirements are met, the court considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In exercising its discretion, the Court should consider Section 1782(a)'s "'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'"  *In re Application of Biomet Orthopaedics Switzerland GMBH*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S. at 252).  This Court has granted at least one Section 1782 application upon finding the statutory elements and *Intel* factors met.  *See, e.g.*, *In re Request from Vienna*, No. 23-mc-258-CFC, 2023 WL 6278815 (D. Del. Sept. 26, 2023).  This Application satisfies each condition.

I.    **THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

A.    **Respondents "Reside" or Are "Found In" this District.**

Section 1782's requirement that an entity "reside or be found" in a district is satisfied when an entity is incorporated in the district.  *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-mc-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013) ("Skype is a Delaware corporation, and thus resides in the District of Delaware for the purposes of § 1782."); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) ("BAC is a Delaware corporation and therefore it resides and is found in this District").  Respondents both are incorporated in Delaware and thus are "found" in this District for the purposes of Section 1782. Loft Decl., Exs. 3 and 4.

That evidence may be located abroad does not change the analysis.  *See, e.g.*, *Request From Vienna*, 2023 WL 6278815, at *3 ("Section 1782 requires that *the person* from whom documents are sought reside or be found in the district.  It does not require that *the documents* be maintained or found in the district."  (emphasis in original)).  So long as the documents are within the possession, custody, or control of the respondent, they are discoverable under Section 1782.  Here, Respondents are the corporate parents of Kroll Advisory, the entity that performed the relevant

analysis as a valuation expert for the CNMV.  Aragón Decl. ¶ 26.  Kroll Advisory is wholly owned by American Advisory, *id.*, Ex. 12, which is, in turn, wholly owned by Kroll.  Loft Decl., Ex. 5. Documents held by Kroll Advisory are thus within the possession, custody, or control of Respondents and subject to discovery here.  *See, e.g.*, *Request from Vienna*, 2023 WL 6278815, at *3 ("If, on the other hand, Sandoz Inc. wholly owns Sandoz GmbH and/or Lek or otherwise has the legal right to obtain certain documents from Sandoz GmbH and/or Lek upon demand, then it has control over those documents for purposes of § 1782."); *Liverpool*, 2021 WL 3793901, at *1.

In a prior case from this District, Chief Judge Connolly considered a Section 1782 application seeking evidence for use in a Japanese appraisal case from Bank of America.  *See Liverpool*, 2021 WL 3793901, at *1.  Bank of America argued that the first statutory element was not satisfied "because the requested documents 'reside—if anywhere—in Japan with BofA Securities,'" its Japanese subsidiary.  *Id.*  Chief Judge Connolly rejected that argument, reasoning that "BofA Securities is not the target of the subpoena.  Liverpool seeks to serve the subpoena on [Bank of America], not BofA Securities; and [Bank of America] is a Delaware corporation and therefore it resides and is found in this District.  Accordingly, the first condition of § 1782 is satisfied here."  *Id.*  The court went on to hold that "[t]o be clear, and so there is no doubt about how to interpret this Memorandum Order, because BAC is a Delaware corporation and the parent of BofA Securities, documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control."  *Id.*  Similarly here, because both Respondents are Delaware entities and are parents of Kroll Advisory, even documents that "reside" with Kroll Advisory are nonetheless in Respondents' possession, custody, and control.  The first statutory element is satisfied here.

**B.      The Discovery Sought is "For Use" in a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery "will be *employed with some advantage* or *serve some use* in the [foreign] proceeding—not necessarily [that it is] something without which the applicant could not prevail." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (emphasis added).   Discovery need not be admissible to be "for use" in a litigation, "[r]egardless of whether a foreign tribunal may deny admission of a document in the future, or whether it already has." *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 17 (2d Cir. 2020), *as amended* (June 5, 2020).   Indeed, Petitioner need not show that the information sought would be discoverable or admissible in the foreign proceedings. *In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011).[1]   Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains— before a foreign tribunal."   *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original).

Here, the Requested Discovery is intended for use in the Spanish Proceeding and will "be employed with some advantage or serve some use." *Mees*, 793 F.3d at 298.   The Second Circuit's decision in *Sampedro* is instructive here.   There, the Second Circuit upheld a district court's

---

[1] For example, in a prior case from this District, a respondent to a Section 1782 application argued that the evidence sought would not be useful to an Italian court because the requested documents were not relevant to the ultimate issues in that proceeding.  *In re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782*, No. 20-mc-334-MN, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021), *reconsideration denied sub nom. In re Eni S.p.A.*, 2021 WL 2985171 (D. Del. July 15, 2021).   Judge Norieka rejected that argument, reasoning that "Respondents therefore speculate as to the admissibility and usefulness of the evidence Eni seeks.   Section 1782, however, does not require the district court to conduct such a speculative inquiry.   The Third Circuit has stated that 'it would contradict the express purpose of section 1782 if the American court were required to predict the actions of another country's tribunal.'"  *Id.*  (quoting *Bayer*, 146 F.3d at 192)).   The court held that "Respondents' arguments about the ultimate admissibility and relevance of Respondents' documents do not show that the requested discovery would not be 'for use' in the Italian proceedings under § 1782."  *Id.*

decision to permit continued Section 1782 discovery despite a Spanish court denying the petitioner's request to introduce into evidence documents obtained from the Section 1782 proceeding. *Sampedro*, 818 F. App'x at 17. Specifically, the Second Circuit held that the Spanish court's decision did not render the Section 1782 discovery no longer "for use" in the foreign proceeding, because the petitioner would still "prepare witnesses, craft questions, and present his case" in the Spanish litigation, and thus he would have the opportunity "to place a beneficial document – or the information it contains – before a foreign tribunal." *Id.* Such is the case here. As explained by the Petitioner's Spanish Counsel, the Requested Discovery will assist Petitioner in litigating its claims in the Spanish Proceeding, and Petitioner will have the "practical ability" to place the Section 1782 discovery before the Spanish courts, Aragón Decl. ¶¶ 22–24, which is all that is required. *See In re Accent Delight*, 869 F.3d at 131–32. The requested discovery is therefore plainly "for use" in the Spanish Proceeding, and Petitioner has thus satisfied Section 1782's second statutory requirement. *See, e.g.*, *Polygon*, 2021 WL 1894733, at *4 (finding this statutory requirement satisfies where petitioner requested documents concerning a takeover approved by the CNMV because such documents "appear[ed] highly relevant to [the petitioner's] contention that the takeover bid undervalued [the target company].").

### C. Petitioner Is An "Interested Person".

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) ("An interested person includes a party to the foreign litigation, whether directly or indirectly." (internal quotes omitted)). Petitioner is a party to the Spanish Proceeding, Aragón Decl. ¶¶ 2, 21, and thus is an "interested person" under Section 1782. All of Section 1782's statutory elements are satisfied here.

## II.    THE *INTEL* FACTORS WEIGH IN FAVOR OF GRANTING DISCOVERY

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### A.    *Intel* I: Respondents Are Not Parties to the Spanish Proceeding.

The first *Intel* factor weighs in favor of discovery when a respondent "is not a participant in the foreign litigation." *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016); *Liverpool*, 2021 WL 3793901, at *2 ("[N]either BAC nor BofA Securities is a participant in the Japanese action and therefore the first *Intel* factor favors compelling the discovery sought by Liverpool"). The reason for this inquiry is because "when the person from whom the discovery is sought is a participant in the foreign proceeding, the need for the § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

Here, Respondents are not parties to the Spanish Proceeding. Aragón Decl. ¶ 25. As non-parties, Respondents are not subject to party discovery in the Spanish Proceeding. *Id.* Moreover, Petitioner's means of obtaining the discovery sought in this Application are very limited under Spanish law. *Id.* ¶ 17. Petitioner thus likely cannot obtain the discovery from Kroll through the Spanish Proceeding. *See id.* Accordingly, the first *Intel* factor weighs in favor of granting the Application. *See, e.g.*, *Biomet*, 742 F. App'x at 696 (district court erred in quashing Section 1782 application where petitioner could not obtain the discovery it needed under German procedure); *Polygon*, 2021 WL 1894733, at *4 (finding this factor weighed in favor of petitioner because respondent was "not a party to the Spanish Proceeding, which are brought by [the petitioner]

13

against the CNMV," and reasoning it was a "suspect assumption that the documents would be discoverable in the Spanish proceedings.").

> **B.**    *Intel* **II: The Spanish Court Will Be Receptive to the Requested Discovery.**

The second *Intel* factor requires courts to consider whether the nature, attitude, and procedures of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  *In re Application of Gilead Pharmasset LLC*, No. 14-mc-243 (GMS), 2015 WL 1903957, at *2 (D. Del. Apr. 14, 2015).  There is a strong presumption that foreign tribunals will be receptive to discovery obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the discovery obtained through Section 1782.  *See Id*. at *3 ("The party opposing the discovery bears the burden of persuading the Court that the foreign tribunals would not consider the discovery sought by the § 1782 order.").  Moreover, "the general view is that the second *Intel* factor weighs against discovery only where there is 'authoritative proof' that the foreign court would reject the evidence."  *In re O'Keeffe*, No. 14–5835 (WJM), 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015), *aff'd sub nom*. *In re The Application of Kate O'Keeffe for Assistance Before a For. Trib.*, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), *aff'd sub nom*. *In re O'Keeffe,* 646 F. App'x. 263 (3d Cir. 2016) (emphasis in original); *see also Gilead Pharmasset*, 2015 WL 1903957, at *4 ("Furthermore, the foreign tribunals have not been shown to be unreceptive to evidence obtained as a result of this application simply because the Entitlement Proceedings may place 'little evidentiary value' on deposition discovery.").

As explained by Petitioner's Spanish Counsel, Spanish courts are likely to be receptive to evidence gather from abroad.  Aragón Decl. ¶ 27 ("[E]vidence obtained through Section 1782 is generally accepted by Spanish courts.").  This analysis is confirmed by courts across the country that have held that Spanish courts are amenable to receiving and relying upon evidence obtained by litigants through Section 1782.  For example, in a recent analogous decision granting discovery

under Section 1782 in connection with a foreign proceeding before the Spanish Court, the District Court for the District of Rhode Island held that the Spanish Court would be receptive to discovery assistance from evidence gathered pursuant to Section 1782. *Polygon*, 2021 WL 1894733 at *5. In *Bayer*, the Third Circuit reversed for abuse of discretion a district court's refusal to grant discovery for use in Spanish Proceeding where "the evidence presented to the district court strongly suggested receptivity by the Spanish court." 146 F.3d at 196.[2]

### C.    *Intel* III: Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."); *see also In re O'Keeffe*, 2015 WL 540238, at *6. Moreover, "there is no requirement that a foreign litigant first attempt to obtain discovery through the foreign forum before resorting to Section 1782." *Intel*, 542 U.S. at 261; *see also Kulzer*, 390 F. App'x at 92 ("[T]he [1782] statute does not reference a requirement of discoverability under the foreign country's laws."). Instead, this factor applies only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges

---

[2] *See also, e.g.*, *In re Sampedro*, No. 18-mc-47 (JBA), 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018) (finding Spanish courts receptive to U.S. court assistance "[i]n the absence of any evidence … that specifically addresses and rejects the use of discovery gathered abroad); *In re Bernal*, No. 18-21951, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) (same).

that *prohibit* the acquisition or use of certain materials." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). No such circumstance is present here.

The requested discovery here does not attempt to circumvent any proof-gathering restrictions in Spain. To the contrary, the Spanish Court is receptive to evidence obtained under Section 1782 and U.S. courts have consistently provided assistance to Spanish Proceeding by granting Section 1782 discovery. *See supra* II.B. Furthermore, there is no Spanish law prohibiting a party from seeking Section 1782 discovery, requiring it to obtain permission from the Spanish Court before seeking Section 1782 discovery, or that declaring that evidence obtained via Section 1782 is inadmissible. Aragón Decl. ¶ 27.

The ruling from the Spanish Court related to documents from Respondents in the Spanish Proceeding does not change this analysis. Aragón Decl. ¶ 20. Although the Spanish Court held that information relating to Respondents was not part of the CNMV administrative file and therefore not available to Petitioner from the CNMV, *id.*, this does not amount to a holding that evidence from Respondents is generally not discoverable or irrelevant. The District Court for the District of Rhode Island permitted a Section 1782 application in nearly identical circumstances. In that case, Polygon, the petitioner, was challenging a takeover approval by the CNMV. *Polygon*, 2021 WL 1894733. Polygon "requested that the CNMV augment the file with many of the documents now sought through § 1782 discovery." *Id.* at *1. The Spanish court there denied the request for the documents because they were "not part of the case files of the CNMV and because Polygon had failed to show why the discovery, which the court described as confidential, was necessary." *Id.* (internal quotations omitted). Like Petitioner here, Polygon then filed its statement of claim based on the un-augmented administrative file. *Id.* The respondent argued that "by rejecting Polygon's request to expand the administrative file to include many of the documents

16

sought in the instant proceeding, the Spanish court ruled that those documents were irrelevant." *Id.* at *3. The *Polygon* court disagreed, reasoning that the Spanish court did not rule that the documents were irrelevant, merely that "the CNMV was not required to provide the documents because they were not part of the CNMV's case file and because Polygon had failed to meet its burden of demonstrating a need for confidential documents." *Id.*

Similarly here, as summarized above, *see supra* at 6, the Spanish Court did not find that the requested information was irrelevant to the CNMV Authorization, but instead, that it was not part of the CNMV's administrative file. Aragón Decl. ¶ 20. Like in *Polygon*, the ruling of the Spanish court has no bearing on the discoverability of Respondents' documents in this proceeding.

Therefore, the third *Intel* factor weighs in favor of granting the Application.

### D. *Intel* IV: The Subpoenas Are Not Unduly Burdensome.

The requested discovery is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *See Bayer*, 146 F.3d at 195 ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

*First*, the Subpoenas are tailored to seek only documents and information directly relevant to issues in the Spanish Proceeding, namely, evidence related to Respondents' role, through their Spanish subsidiary, as an external advisor to the CNMV. According to Petitioner's Spanish counsel, "[t]he requested discovery from Respondents, as the corporate parents to the external valuation adviser to the CNMV, therefore targets key information about the issues at the heart of the Spanish Proceeding." Aragón Decl. ¶ 23.

In a recent analogous Section 1782 decision in this District, Judge Connolly considered a Section 1782 application brought by a dissenting shareholder involved in a Japanese appraisal

proceeding. *Liverpool*, 2021 WL 3793901, at *1. The petitioner sought discovery from Bank of America's Japanese subsidiary that acted as the financial advisor to the Special Committee in the transaction at issue. *Id.* at *2. Bank of America argued that the requests were unduly burdensome because "Petitioner broadly lists every category of conceivable relevance to the LINE transaction—including: *all* documents and communications exchanged with any member of the board, the Special Committee, the Company, or their advisors relating to the transaction or any alternatives contemplated by the Company; *all* documents and communications exchanged with the Buyer Group concerning the Company; and *all* documents exchanged with any financial advisor of the Buyer Group." *Id.* at *2 (emphasis in original). In ruling on burden, Judge Connolly "reject[ed] BAC's complaints that Liverpool made no attempt to narrowly tailor its requests and that the subpoena broadly listed 'every category of conceivable relevance to the LINE transaction.' The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action." *Id.* at *3. Like in *Liverpool*, the issues to be decided in the Spanish Proceeding are necessarily broad. Given Respondents' "role in the transactions at issue in the [Spanish Proceeding]," *id.*, the scope of the requests, which are very similar to those in *Liverpool*, *id.*, are reasonable.

*Second*, the discovery requests are temporally limited to a one-year period of March 2022, approximately two months prior to the Siemen Energy's application to the CNMV seeking authorization of the Takeover Bid, to April 2023, approximately two months after the CNMV's decision to authorize the Company's delisting.[3]

---

[3] *See In re Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (holding that a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is any possibility that the information sought may be relevant to the subject matter of the action").

*Third*, depositions are not unduly burdensome here.  Courts in this Circuit routinely grant depositions of third parties under Section 1782.  *See, e.g.*, *In re O'Keeffe*, 646 F. App'x at 265; *In re Request from Cayman Islands*, No. 22-mc-00536-RGA, ECF No. 6 (Order) (D. Del. Jan. 12, 2023); *Gilead Pharmasset LLC*, 2015 WL 1903957, at *5 ("The scope of Gilead's application is not unduly intrusive because the requested documents, and deposition topics, pertain to the issue of inventorship raised in the Entitlement Proceedings."); *In re Third Eye Cap. Corp.*, No. 22-963 (JXN) (MAH), 2022 WL 714758, at *1 (D.N.J. Mar. 10, 2022); *Matter of HES (Caribbean) Int'l Holdings, S.R.L.*, No. 20-506 (CCC) (ESK), 2020 WL 728892, at *1 (D.N.J. Feb. 13, 2020); *In re Ex Parte Application of Sandoz Canada, Inc.*, No. 20-02425 (MAS) (DEA), 2020 WL 5642189, at *4 (D.N.J. Sept. 22, 2020) ("The deposition topics and documents requested in the proposed subpoena appear to be narrowly tailored to the subject matter of the patent disputes now pending in the Federal Court of Canada.").

*Finally*, if the Court has any remaining concerns about undue burden, Petitioner is willing to meet and confer with Respondents to address those concerns.  If the Court finds merit to any objections from Respondents on scope, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).  The Third Circuit has held, in considering the fourth *Intel* factor, that it would be "erroneous to turn down [the petitioner's] discovery request flat without requiring [the respondent] to negotiate with [the petitioner] over cutting down the request."  *In re Biomet Orthopaedics*, 742 F. App'x at 699 (citing *Euromepa*, 51 F.3d at 1101) (cleaned up).

19

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court grant its Application for an order pursuant to 28 U.S.C. § 1782.

Respectfully submitted,

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

OF COUNSEL:

Duane L. Loft
Brianna Hills Simopoulos
Jingxi Zhai
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
duane.loft@pallasllp.com
brianna.simopoulos@pallasllp.com
jingxi.zhai@pallasllp.com

Dated:  December 22, 2023

_/s/ Jamie L. Brown_
Jamie L. Brown (# 5551)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
Telephone: (302) 472-7300
jbrown@hegh.law

_Attorneys for Petitioner_