## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re Application of

FourWorld Capital Management LLC,

Petitioner, for an Order Pursuant to
28 U.S.C. § 1782 to Conduct
Discovery for Use in a Foreign Proceeding.

Civil Action No. 23-1460-GBW

---

### MEMORANDUM ORDER

Pending before the Court is Petitioner FourWorld Capital Management LLC's

("FourWorld" or "Petitioner") application pursuant to 28 U.S.C. § 1782 ("Section 1782")

seeking documents and depositions from Respondents Kroll, LLC (f/k/a Duff & Phelps, LLC)

("Kroll") and American Appraisal Associates, LLC ("American Appraisal" and collectively,

"Respondents") for use in a pending proceeding in Spain. D.I. 1. FourWorld's application

(hereinafter, the "Application") seeks leave to serve Respondents with subpoenas directing

Respondents to 1) produce the tailored materials described in the subpoenas within thirty days of

service; and 2) provide witnesses, one for each Respondent, to appear for a Rule 30(b)(6)

deposition in compliance with the Subpoenas on a mutually agreeable date and time. *Id.*

Respondents oppose the Application. D.I. 11 at 1–2. Alternatively, Respondents contend that, if

the Application is granted, the parties should be ordered to: 1) meet and confer regarding the

scope and relevance of each request; 2) enter an agreed-upon ESI protocol and protective order;

and 3) amend the Subpoenas to seek only documents and information that are narrowly tailored

to the issues before the Spanish Court and minimize Respondents burden. *Id.* Finally,

Respondents request that the full cost of their compliance be shifted to FourWorld. *Id.* Having

viewed the Application and all related pleading, the Court finds that FourWorld's Application is

GRANTED, and Respondents' request to shift fees to FourWorld is DENIED without prejudice. Additionally, the parties are ordered to meet and confer to discuss the scope of each request and to enter an agreed-upon ESI protocol and protective order. Respondents' request that the Court require FourWorld to amend the subpoenas is otherwise DENIED.

## I.   BACKGROUND

### a.   The Siemens Energy Takeover

FourWorld holds a minority stake in Siemens Gamesa, a Spanish company that manufactures and sells wind turbine technology. D.I. 4 at ¶ 5. Until 2022, Siemens Gamesa was publicly traded on the Madrid, Barcelona, Bilboa, and Valencia Stock Exchange. *Id.* However, in May 2022, Siemens Gamesa's majority shareholder, a German company named Siemens Energy, announced that it was considering a voluntary cash tender offer to purchase all outstanding shares of Siemens Gamesa. *Id.* at ¶ 7. The announcement noted that Siemens Energy intended to delist Siemens Gamesa once it obtained at least 75 percent of Siemens Gemesa's share capital through the takeover bid. *Id.* at ¶ 9.

As required by Spanish law, Siemens Energy filed an authorization request with the Spanish National Securities Market Commission (hereinafter, the "CNMV"), on May 31, 2022, outlining its takeover bid for Siemens Gemesa. *Id.* at ¶ 10. In support of its authorization request, Siemens Energy submitted a takeover prospectus and a valuation report issued by PricewaterhouseCoopers Asesores de Negocios, S.L. (the "PwC Report") which valued each share of Siemens Gamesa between 16.03 and 19.85 euros. *Id.* To assist the CNMV with its review of the authorization request, Respondent Kroll Advisory served as the CNMV's external valuation advisor and provided the CNMV with analysis and advice regarding Siemens Energy's takeover bid. *Id.* at ¶ 11; D.I. 12 at ¶ 16. As part of this advice, Respondent Kroll Advisory

2

prepared a valuation report (hereinafter, the "Kroll Report"), which supported and validated the findings in the PwC Report. Respondents note, however, that the decision to approve the takeover or justify the price given in the PwC Report belonged only to the CNMV. D.I. 12 at ¶ 17.

Accordingly, on November 7, 2022, Siemens Energy's takeover bid was authorized by the CNMV at a price of 18.05 euros per share. D.I. 4 at ¶ 9. Following the authorization, Siemens Energy obtained a 92.72 percent stake in Siemens Gemesa. On January 25, 2023, Siemens Gemesa's shareholders voted to delist the company. D.I. 12 at ¶ 19. Then, on February 3, 2023, the CNMV granted Siemens Energy's request to delist Siemens Gemesa, and the company was delisted shortly thereafter. *Id.* at ¶ 20–21.

### b. The Spanish Proceeding

Under Spanish law, the CNMV's decision to approve a takeover request is subject to judicial review by courts in Spain. D.I. 4 at ¶ 15. A party seeking to challenge a CNMV decision in court must file a writ requesting production of the CNMV's administrative file for the relevant takeover. *Id.* Once the complainant receives the file, the complainant is given twenty days to file their complaint and accompanying evidence. *Id.* at ¶ 16. Alternatively, if the complainant finds that the file is incomplete, the complainant may file a motion to expand the file which, in turn, stays the filing deadline. *Id.* As part of these proceedings, FourWorld contends that the Spanish court "has the power to take evidence, find facts, adjudicate disputes, and order remedies." *Id.* ¶ 17. FourWorld contends, however, that the petitioner's means of obtaining discovery "are much more limited under Spanish law." *Id.*

On January 9, 2023, FourWorld filed a complaint before the Administrative Chamber (Sala de lo Contencioso- Administrativo) of the High Court (Audiencia Nacional) (hereinafter, the "Spanish Court") challenging the CNMV's approval of the Siemens Energy takeover. D.I.

12 at ¶ 22. In its complaint, FourWorld contends "that the CNMV authorized the Takeover Bid at an inadequate and unfair price pursuant to inadequate and erroneous reports provided by the valuation experts," including the Kroll Report. D.I. 4 at ¶ 21. FourWorld further alleges that the CNMV failed to account for "serious conflicts of interest of Siemens Gamesa's directors" and other "exceptional circumstances" in existence at the time the takeover bid was announced. *Id.* The complaint seeks, among other things, an order compelling CNMV to recalculate the applicable share price or, alternatively, an order from the Spanish Court setting a new share price for Siemens Energy's takeover bid. *Id.*

Shortly after FourWorld filed its complaint, the Spanish Court requested the corresponding administrative file from the CNMV. D.I. 12 at ¶ 23. While the CNMV complied with the Spanish Court's request, the CNMV "differentiated between non-confidential documents on one hand; and confidential documents pursuant to its confidentiality and secrecy obligations (including Kroll's report) on the other." D.I. 11 at 6–7. Only those documents that were non-confidential were provided to FourWorld by the Spanish Court. D.I. 12 at ¶ 24.

After receiving the non-confidential documents from the administrative file, FourWorld filed a motion challenging the file as incomplete. *Id.* at 26. FourWorld additionally petitioned the Spanish Court to supplement the file with documents related to the Kroll Report, such as draft reports, spreadsheets, and communications with CNMV and PwC. *Id.* While the Spanish Court originally granted FourWorld's request to supplement the file, the Spanish Court reversed its decision shortly thereafter. D.I. 4 at 19–20. Ultimately, in denying FourWorld's request to supplement the file, the Spanish Court found that the requested documents were not part of the administrative file. *See* D.I. 12 at ¶ 29. The Spanish Court noted, for instance, that the "Works

4

of Kroll Advisory," including Kroll's "spreadsheets and work documents" were "explicitly excluded" from the information provided to the CNMV. *See id.*

On November 9, 2023, FourWorld filed an appeal of the Spanish Court's decision. D.I. 4 ¶ 21. The appeal has not been resolved as of the date of this opinion.

### c. Stage of Proceedings

On December 22, 2023, FourWorld filed the Application before this Court under 28 U.S.C. § 1782. D.I. 1. FourWorld contends that the requested discovery will assist the Spanish Court in examining "both the valuation of the Company and the fairness of the process that led to the CNMV's Authorization." D.I. 4 at ¶ 23. Thus, FourWorld argues that "[t]he requested discovery from Respondents, . . . targets key information about the issues at the heart of the Spanish Proceeding." *Id.* Respondents oppose the Application, arguing instead that "FourWorld seeks the same broad array of documents that it tried and failed to obtain in the Spanish Proceedings, as well as a corporate representative deposition." D.I. 11 at 2–3.

## II.  LEGAL STANDARD

Under Section 1782, United States district courts have discretion to grant applications for discovery to be used in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A court presented with a Section 1782 application must, as a preliminary matter, "first decide[] whether [the three] statutory requirements [of Section 1782] are met." *In re Biomet Orthopaedics Switz. GmBh*, 742 F. App'x 690, 694 (3d Cir. 2018). The statutory requirements condition Section 1782 discovery on a showing that: (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by an

5

interested person. *Pinchuk v. Chemstar Prod. LLC*, No. 13-MC-306-RGA, 2014 WL 2990416, at *1 (D. Del. June 26, 2014).

If the court finds that the application satisfies these statutory requirements, the court then considers certain discretionary factors outlined by the Supreme Court in *Intel Corporation v. Advanced Micro Devices*, to determine whether to grant the application. *Biomet*, 742 F. App'x at 694. "A district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Pinchuk*, 2014 WL 2990416, at *2.

Rather, in deciding whether the court should exercise its discretion to grant the Section 1782 application, the court must carefully weigh the following *Intel* factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and the character of the proceedings; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264–65. In considering each factor, the district court must remain mindful of the twin aims of Section 1782: (1) providing efficient assistance to participants in international litigation, and (2) encouraging foreign countries—by example—to provide similar assistance to our courts. *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12–mc–193–RGA, 2013 WL 646236, at *1 (D.Del. Feb. 21, 2013).

## III.  DISCUSSION[1]

### a.  Factor I favors granting the Application.

Under the first *Intel* factor, the Court considers whether the respondent is a participant in

the foreign proceedings.  *Intel*, 542 U.S. at 244.  The Supreme Court has held, "when the person

for whom discovery is sought is a participant in the foreign proceeding, the need for § 1782(a)

aid generally is not as apparent as it ordinarily is when evidence sought from a nonparticipant in

the matter arising abroad."  *Id.* at 264.  Conversely, courts typically find that this factor weighs in

favor of granting the requested discovery where, as is the case here, the respondent "is not a

participant in the foreign litigation."  *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016);

*Kyma Cap. Ltd. v. PJT Partners, Inc.*, No. 23-mc-670 (D. Del. Jan. 9, 2024) (Transcript)

("[C]ourts generally find that it cuts in favor of granting the application as long as the respondent

is not a party.  And this does in particular seem to be the standard practice within the third

circuit, so I find that this factor weighs in favor of granting the application.").

Respondents argue that the first factor should weigh against granting FourWorld's

Application because "[m]any of the documents requested from Kroll are . . . also within the

possession of CNMV."  D.I. 11 at 8.  However, the law does not require that the requested

discovery be unavailable from any party to the foreign proceeding.  Rather, the primary inquiry

for the Court's consideration is whether Respondents are participants in the foreign proceeding.

As the Supreme Court noted in *Intel*, "a foreign tribunal has jurisdiction over those appearing

before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  "In contrast,

nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional

---

[1] Because Respondents concede that the statutory requirements are met, the Court's Opinion discusses only the *Intel* factors.

reach; hence, their evidence, available in the United States, may be unobtainable absent §

1782(a) aid." *Id.* at 244. Here, there is no dispute that Respondents are not participants in the

Spanish proceeding. *See* D.I. 11 at 8 (conceding that "Kroll is a non-participant in the Spanish

Proceedings").

Still, the Court recognizes that "in some circumstances, evidence may be available to a

foreign tribunal even if it is held by a non-participant to the tribunal's proceedings." *In re Ex*

*Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016). Thus, some

courts have looked beyond the respondent's participant-status and instead consider "whether the

evidence 'is available to the foreign tribunal.'" *Id.* While Respondents cite no cases in this

Circuit where sister-courts have looked beyond the respondent's status as a non-participant, such

an inquiry would be of no consequence here even if the Court followed the out-of-Circuit

precedent, since "the Application seeks discovery of Kroll's internal work product and

communications," which CNMV is unlikely to possess.[2] *See* D.I. 11 at 16 (noting that, "CNMV

would not have been privy to Kroll's communications with third parties such as Siemens Energy,

Siemens Gamesa, or PWC [] or internal Kroll communications and any intermediate work or

analysis performed by Kroll concerning the takeover [] or valuation of Siemens Gamesa").

Accordingly, this factor weighs in favor of granting the Application.

---

[2] FourWorld claims that Spanish law would prevent Petitioner from seeking documents from
Kroll Advisory in Spain. D.I. 3 at 13-14. Respondents, on the other hand, argue that the option
is available under Spanish law. D.I. 11 at 10. Because the Court is not able to "engag[e] in the
interpretation of [Spanish] law," the Court cannot resolve the dispute between Respondents'
Spanish counsel and FourWorld's Spanish counsel regarding whether, and to what extent,
FourWorld could seek documents from Kroll Advisory in Spain. *See In re O'Keeffe*, 646 F.
App'x 263, 267 (3d Cir. 2016). Accordingly, the Court will not consider this argument as part of
its consideration of the record.

### b. Factor II is neutral.

Under the second *Intel* factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The relevant inquiry asks, "whether the foreign court would consider the evidence revealed from a § 1782 order." *Via Vadis*, 2013 WL 646236, at *2 (D.Del. Feb. 21, 2013). The burden of demonstrating that the foreign court would not consider the discovery sought pursuant to a § 1782 order is on the party opposing the discovery request. *In Re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir.2011) (citing *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir.1998)).

Respondents contend that "[t]he Spanish Court has shown it is not receptive to the evidence that FourWorld seeks because it has already denied access to the requested documents in the Spanish Proceedings." D.I. 11 at 11. Respondent argues that the court's holding in *Qualcomm* is illustrative. *Id.* The Court disagrees.

In *Qualcomm*, the court found that the requested Section 1728 discovery would frustrate antitrust laws in Korea which empowered the Korean Fair Trade Commission (the "KFTC") to investigate alleged violations of Korea's antitrust law and allowed the KFTC to keep evidence it receives from third parties confidential. *Qualcomm*, 162 F. Supp. 3d at 1032-33. The court noted that relevant law allowed the KFTC to keep the third-party submissions out of the reach of even the party who is the target of the investigation "[t]o encourage third parties to provide complete submissions and protect their sensitive and confidential information." *Id.* Despite this clear policy, the applicant in Qualcomm filed a Section 1728 request with certain third parties in the United States after the KFTC refused to disclose the evidence in its possession to the applicant. *Id.* at 1034. In analyzing the second Intel factor, the *Qualcomm* court found that there

was no doubt that the KFTC would be unreceptive to the evidence, as "[t]he KFTC's amicus brief ask[ed] this court 'to deny Qualcomm's applications in their entirety as a matter of comity' and state[d] that 'the KFTC ha[d] no need or use for the requested discovery.'" *Id.* at 1039-40.

In this matter, however, the Spanish Court denied Petitioner's request for supplemental evidence because the requested information was not part of the CNMV's administrative file. D.I. 11 at 3. The Spanish Court did not hold that the documents were irrelevant. Thus, the Court is not faced with the same express objection as the court in *Qualcomm*, where the KFTC repeatedly stated its position that it had "no need" for the requested discovery. *See Qualcomm*, 162 F. Supp. 3d at 1040. Without a more "definitive answer regarding receptivity" from the Spanish Court, the Court agrees with FourWorld that Spanish courts are generally receptive to § 1782 and assumes that the same would hold true here. *In re Application of Polygon Glob. Partners LLP for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 21-MC-007 WES, 2021 WL 1894733, at \*5 (D.R.I. May 11, 2021).

Still, the Court cannot find that the second *Intel* factor weighs in favor of granting FourWorld's application because of the pending appeal of the Spanish Court's discovery decision in Spain. A goal of Section 1782 is to encourage efficient discovery exchanges between the United States and foreign countries. *Intel*, 542 U.S. at 252. If the Court grants FourWorld's Application while an appeal is pending, however, there is a chance that the Court "may duplicate that tribunal's efforts." *In re Letter of Request from SPS Corp I*, No. 21-MC-00565-CFC, 2022 WL 3908067, at \*3 (D. Del. Aug. 30, 2022), *reconsideration denied sub nom. In re Letter of Request from SPS Corp 1*, No. 21-MC-565-CFC, 2022 WL 16739786 (D. Del. Nov. 7, 2022). In such cases, our courts often prefer to wait until the foreign tribunal has resolved the pending request. *Id.* Because the appeal in Spain covers only "some documents being sought here,"

however, the Court finds that the risk of duplicated efforts less compelling. D.I. 16 at 7 n.6. Thus, the Court finds that the second *Intel* factor is neutral.

### c. Factor III favors granting the Application.

Under the third *Intel* factor, the court "consider[s] whether the § 1782[] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. Respondents argue that this factor weighs against granting FourWorld's Application because FourWorld's Section 1782 request was made in an attempt "to avoid the Spanish Court's unfavorable decision in the Spanish Proceedings." D.I. 11 at 12. However, as noted above, the Spanish Court declined Petitioner's request not because the Spanish Court found that the requested evidence was irrelevant. *See supra* at 10. Rather, the request was declined because the information FourWorld sought was not part of the CNMV's administrative file. D.I. 11 at 3. The Court cannot conclude from this decision alone that the Spanish Court ruled that the requested discovery was irrelevant. Indeed, the Supreme Court has warned that "a foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261. In such cases, a "lack of discoverability in the foreign proceeding [alone will] not bar discovery." *Polygon*, 2021 WL 1894733, at *5.

The Court is similarly unpersuaded by Respondents claims that "FourWorld's request would undermine Spanish law and policy." D.I. 11 at 13. While Respondents once more contend that *Qualcomm* is illustrative, the *Qualcomm* court's analysis of the third *Intel* factor is distinguishable in several key respects. *See id.* The applicant in *Qualcomm*, for instance, sought foreign discovery in order to "obtain[] documents submitted to the KFTC by third parties."

*Qualcomm*, 162 F. Supp. 3d at 1041.  Thus, the *Qualcomm* court found that "allowing

Qualcomm to do this" would "subvert the KFTC's power to control when and how confidential

investigatory materials are released." *Id.* (internal citations omitted).  Here, on the other hand,

FourWorld seeks discovery on issues which include:

> (i) the fairness of the Takeover Bid share price; (ii) the process leading to
> the CNMV's approval of the Takeover Bid and the Takeover Bid share
> price; (iii) transactions that the Company entered after the Takeover Bid;
> (iv) financial analysis, email or other correspondence, meeting minutes, and
> any other materials used, reviewed, or prepared in support of Respondents'
> valuation of the Takeover Bid d, including materials related to any valuation
> reports they rendered, and/or any advice provided by Respondents; and (v)
> any alternative bids to acquire the Company.

In their briefing, Respondents concede that "most of the documents and information

sought" are documents that "CNMV did not know [] even existed." D.I. 11 at 16.  As

Respondents argue, "CNMV would not have been privy to Kroll's communications with third

parties such as Siemens Energy, Siemens Gamesa, or PWC [], or internal Kroll communications

and any intermediate work or analysis performed by Kroll concerning the takeover [] or

valuation of Siemens Gamesa was presented with explicit." *Id.*  While the applicant in

*Qualcomm* also requested "more discovery under its Section 1782 applications than it can obtain

through the [KFTC's] Case Handling Procedures," the court found that the applicant's request

raised "additional concerns," which this Court finds are not present here. *Qualcomm*, 162 F.

Supp. 3d at 1041-41.

That is, the government body in *Qualcomm*, the KFTC, was the administrative agency

responsible for investigating anticompetitive misconduct and enforcing Korea's anti-monopoly

regulation. *Id.* at 1032.  As such, the court emphasized that KFTC investigations "often depend

on the cooperation of third parties . . . ." *Id.*  Thus, "[t]o encourage third parties to provide

complete submissions and protect their sensitive and confidential information, [Korean law] mandates that third party submissions be kept confidential." *Id.* Under this law, the KFTC "balance[s] Korean policy goals and the privacy and confidentiality rights of third parties against the target of the investigation's potential need for the information" in deciding whether and when to disclose evidence obtained from third parties to the target. *Id.* at 1041. If, however, a target of a KFTC investigation "could run to the U.S. courts and obtain all materials provided to the KFTC," Section 1782 would become a tool that the target company could use to "upset the delicate balancing act" and to thwart the KFTC's investigation process. *Id.* at 1041 (internal citations omitted).

In this matter, the CNMV "analyze[s] and authorize[s] cash tender offers" and, at times, may contract with third parties to assist with its review of an offer. D.I. 11 at 5. While the Court has no doubt that the assistance of third parties can play a similarly critical role in the CNMV's review process, the need for confidentiality between the CNMV and third parties is not triggered by the same concern that protecting third-party evidence from the target "hinder the KFTC's ability to enforce antitrust law," as noted by the court in *Qualcomm*. *See Qualcomm*, 162 F. Supp. 3d at 1042. The CNMV is not seeking to enforce or uncover antitrust violations. Additionally, FourWorld is not the target of an on-going CNMV investigation. Thus, the Court disagrees with Respondents' claims that this matter raises "the same concerns with confidential third-party information" as *Qualcomm*. D.I. 11 at 13.

Further, the *Qualcomm* court found that the KFTC had clear restrictions and policies for requesting evidence and approving the applicant's Section 1782 request would violate those procedures. *Qualcomm*, 162 F. Supp. 3d at 1041 (noting Korean confidentiality rules that put in place "procedures for requesting 'copies of documents and data supporting'" from the KFTC).

While Respondents argue that discovering the work product of third parties, like Kroll, would similarly violate Spanish confidentiality laws, FourWorld disputes that the confidentiality laws identified by Respondents are applicable. *Compare* D.I. 11 at 16 ("Under Act 6/2023, of 17 March, on the Securities Markets and on Investment Services, the CNMV is under strict confidentiality obligations given the nature of its powers (supervision, inspection, sanctioning) . . . . Consequently, work product of third parties who help government agencies, like CNMV, is protected because the information is classified as confidential.") *with* D.I. 16 at 8 ("Article 248 does not apply to information not exchanged with the CNMV.") (internal citations omitted).

Specifically, Respondents contend that the CNVM is governed by a legal regime "currently contained in Act 6/2023, of 17 March, on the Securities Markets and on Investment Services ('LMVSI')." D.I. 12 at ¶ 3. According to Respondents, Article 233 of the LMVSI, in particular, subjects the CNMV "to a strict confidentiality regime. . . ." *Id.* at ¶5. Respondents submit a declaration from Mr. Juan Rodriguez de la Rua Puig, (hereinafter "Mr. Rodriguez"), the Deputy Director General of CNMV, noting that Article 233 requires:

> all information, documents or data held by the CNMV or other competent authorities as a result of the exercise of the CNMV's functions related to supervision and inspection, including the sanctioning power, provided for in the LMVSI or other laws or European regulations may not be disclosed nor may any access to them be granted to any person or authority outside the cases provided for in the LMVSI.

D.I. 12 at ¶ 5.

In support of its contrary interpretation of Spanish confidentiality rules, FourWorld submits a declaration from FourWorld's counsel in the Spanish proceeding, Ignacio Aragón Alonso ("Mr. Alonso"). *See generally* D.I.17. According to Mr. Alonso, the contract between the CNMV and Kroll only states that 'the report is covered by the duty of secrecy of art. 248

14

TRLMV.'" *Id.* at ¶ 6. Mr. Alonso asserts, however, that Article 248 is inapplicable here because the provision "only prevents agents of CNMV, such as Respondents, from disclosing confidential information or data 'that the CNMV or other competent authorities have received.'" *Id.* at ¶ 9. Finally, Mr. Alonso contends that, even if Article 248 applied, Spanish courts recognize several exceptions to the rule, including an exception that applies when the protected information is "demanded by the competent administrative or legal authorities in the context of administrative or legal appeals filed regarding the regulation and discipline of securities markets," which FourWorld argues would apply to the Section 1782 request made before this Court. *Id.* at ¶¶ 10-15. Thus, FourWorld argues that neither Article 248 nor the contractual agreement between CNMV and Kroll protect the requested discovery because the Application does not seek documents that are in CNMV's possession or documents that were exchanged with the CNMV. D.I. 16 at 8.

Given these conflicting accounts of Spanish law, the Court cannot find that granting FourWorld's Application would undermine Spanish confidentiality rules. In fact, resolving the question of whether FourWorld's requested discovery is protected by provisions of the LMVSI "would require this Court to become embroiled in exactly the kind of 'legal tug-of-war' that courts should avoid when adjudicating Section 1782 applications." *In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d 1, 11 (D.D.C. 2017). As courts have long recognized, such disputes over foreign law risk placing courts in a "speculative foray[ ] into legal territories unfamiliar to federal judges." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). This, in turn, transforms a request for discovery into "a battle-by-affidavit of international legal experts" wherein the district court is asked to make a "superficial" ruling on foreign law. *Id.*; *In re Veiga*, F.Supp.2d 8, 24 (D.D.C. 2010).

In such circumstances, courts have recognized that any attempt by a federal judge to interpret and apply foreign law would be contrary to the twin aims of Section 1782 "of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts...." *Euromepa*, 51 F.3d at 1097, 1100; *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985) ("requir[ing] that a district court undertake a more extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of section 1782."). Thus, courts often decline "to delve into complex questions of foreign law" absent "authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782." *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997) (contending that "a district court should not refrain from granting the assistance afforded" under Section 1782 based solely on allegations that the foreign tribunal would reject the evidence). The burden of providing such "authoritative proof" lies with the party challenging the discovery request which, here, is Respondents. *Polygon,* 2021 WL 5042733, at *2.

While, in some instances, the challenging parties have satisfied this burden by showing that "a representative of the foreign sovereign or the foreign tribunal itself has made clear its opposition to the petitioner's request," under these circumstances, the declaration submitted by Mr. Rodriquez cannot serve as authoritative proof of Spanish law. *See In re Barnwell*, 265 F. Supp. 3d at 11. Despite the CNMV's status as an entity of the Spanish government, the CNMV is also the opposing party in the Spanish proceeding. Thus, the CNMV may, perhaps, be serving its own interests by objecting to FourWorld's Application. *Cf Qualcomm*, 162 F. Supp. 3d at 1040 (KFTC noting that it "has no need or use for the requested discovery" in a proceeding before the KFTC); *see also In re Application of Schmitz*, 259 F. Supp. 2d 294, 299 (S.D.N.Y.

2003), *aff'd sub nom. Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79 (2d Cir. 2004).

Given the CNMV's direct involvement as a party in the Spanish proceeding, the Court finds it

"unwise" to accept Mr. Rodriquez's testimony as "clear authority" that the Spanish Court, the

court presiding over the Spanish Proceeding, would reject the evidence requested by FourWorld.

*See Euromepa*, 51 F.3d at 1099 (finding it "unwise—as well as in tension with the aims of

section 1782—for district judges to try to glean the accepted practices and attitudes of other

nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign

law"). Thus, the Court disagrees with Respondents that "issues of comity weigh against

allowing the discovery in this case." *See In re Application of Polygon Glob. Partners LLP*, No.

21-mc-007, ECF No. 33 (D.R.I. Jan. 12, 2022) (finding same).

Accordingly, the Court finds that the third *Intel* factor favors granting FourWorld's

Application.

### d. Factor IV favors granting the Application.

The final *Intel* factor considers whether the discovery requested is "unduly intrusive or

burdensome." *Intel*, 542 U.S. at 265. Respondents contend that this factor weighs against

granting FourWorld's Application because the Application seeks information that is irrelevant

and not proportional to the needs of the case and, separately, because the Application makes

discovery requests that are overbroad. D.I. 11 at 15-18.

In arguing that the Application requests information that is irrelevant to the case,

Respondents contend that "the Kroll Report is arguably the only relevant document, and it is

accessible in the Spanish Proceedings." *Id.* at 15. Thus, Respondents argue that "any additional

discovery would be disproportionate to the needs of the case." *Id.* at 16. The Court disagrees. A

Section 1782 proceeding is governed by the Federal Rules of Civil Procedure, which adopt a definition of "relevance" that is "famously broad." *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 178 (D. Del. 2003); *Philadelphia Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 190 (3d Cir. 2016) ("Relevance is a low bar . . . ."). Because FourWorld's request all relate to Siemens Energy's takeover bid—for which the Spanish Court will have to access the valuation price as part of FourWorld's challenge of the CNMV's decision to approve the takeover bid—the Court finds that the documents requested are relevant. *Cf Qualcomm*, 162 F. Supp. 3d at 1044 (finding that applicant requested irrelevant discovery where the "requests [were] not narrowly tailored temporally, geographically or in their subject matter," and were "not limited to documents or information connected to the KFTC proceedings"). As to Respondents' claim that the requests are not proportionate to FourWorld's needs,[3] Respondents "offer[] no hint, let alone an estimate, of the number of documents covered by the subpoena." *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021). Thus, the Court cannot make a proportionality determination merely because the Application requests "all documents" related to the Kroll Report.

Similarly, without an estimate of the number of documents triggered by each request, the Court cannot find that the requests are overbroad. *Id.* From reviewing the requests alone, the Court notes that the requests are distinguishable from *Qualcomm*, where the applicant requested documents spanning a period of five to eleven years. *Qualcomm*, 162 F. Supp. 3d at 1044. Here, FourWorld requests documents spanning a period less than one year and spans the period in

---

[3] D.I. 11 at 15-16.

which Kroll contracted to assist the CNMV with its review of Siemens Energy's takeover bid.[4] Thus, the Court finds that this time-period is reasonable under the circumstances.

Additionally, because FourWorld agreed "to meet and confer on a narrowed set of topics after [FourWorld] receives the requested documents," the Court cannot find that the deposition subpoenas are overbroad at this time. If the parties are unable to reach a mutual understanding on the scope of the depositions at a later time, Respondents may challenge the deposition subpoenas then.

Finally, regarding Respondents concerns that the requests "risk disclosure of documents and information that are confidential under Spanish law," FourWorld has agreed to enter protective orders with Respondents. Thus, "'any concerns about confidentiality can be addressed by the appropriate protective order.'" *Gilead*, 2015 WL 1903957, at *5 (citing *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *3 n. 9 (N.D. Cal. May 2, 2012)).

Accordingly, the final *Intel* factor weighs in favor of granting the Application.

### e. Costs of Production

While the Court notes Respondents' concern that Kroll's compliance with FourWorld's discovery requests "can take months and cost thousands of dollars depending on the data size," the Court finds that Respondents' request for fee-shifting is premature. *See* D.I. 11 at 19. Discovery from third parties by subpoena is governed under Federal Rule of Civil Procedure 45, and "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance

---

[4] While FourWorld originally requested documents from March 1, 2022 to April 30, 2023, FourWorld agreed to further limit the time period of its request to begin when Respondents were engaged by the CNMV in August 2022 to April 30, 2023. With this concession, the Court finds that the Application covers a reasonable period of time.

with a subpoena, *if those costs are significant.*" *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 915 (N.D. Cal. 2022) (internal quotations omitted). While Respondents assert that "Kroll has worked with issuing counsel before in responding to other § 1782 applications, and from experience, knows the cost and burden associated with compliance," D.I. 11 at 18, this is insufficient to establish that the cost of compliance would be significant in this matter. *Alpine*, 635 F. Supp. 3d at 915. Thus, Respondents' motion to shift the cost of Respondents' compliance to FourWorld is DENIED without prejudice. The parties shall meet and confer to discuss the scope of discovery, and the parties are encouraged to limit costs as much as possible. If Respondents find that they incur costs that are "significant," Respondents may renew their request for fees in a timely manner after they are able to substantiate the costs of compliance.

## IV.    CONCLUSION

Given the above, the Court finds that the balance of the *Intel* factors favors granting FourWorld's Application.

\*\*\*

Therefore, at Wilmington this 16th day of April, 2024, IT IS HEREBY ORDERED that FourWorld's Application for an Order Under 28 U.S.C. § 1782 Permitting Petitioner to obtain certain limited discovery (D.I. 1) is GRANTED and the parties are ordered to meet and confer to discuss the scope of each request and to enter an agreed-upon ESI protocol and protective order. Respondents' motion to shift fees is DENIED without Prejudice.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE